IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REGINALD A. OWENS, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) CASE NO. 2:05-cv-287-MEF |
| | ) |
| WILLIAM MILLER, *et al.*, | ) (WO- Do Not Publish) |
| | ) |
| DEFENDANTS. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pursuant to 42 U.S.C. § 1983, Plaintiff Reginald A. Owens ("Owens"), a state inmate brings this action in which he alleges that the defendants violated his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, Owens alleges that the defendants assaulted him, used excessive force against him, obstructed justice, and conspired to violate his rights on or about October 30, 2004 during his incarceration at the Draper Correctional Facility ("Draper"). As of the date of this Memorandum Opinion, the remaining defendants to this action are: Sergeant William Miller ("Miller"), Correction Officer Larry Philyaw ("Philyaw"), Correction Officer Kevin Rudolph ("Rudolph"), Correction Officer Michael Shuford ("Shuford"), and Correction Officer Paul Sanders ("Sanders"), but only to the extent that they are each sued in their individual capacities. The issues before this Court concern whether any of the aforementioned defendants used excessive force and the nature of Owens' injuries. After weighing the evidence and testimony offered by the parties during a bench trial on June 9, 2008, the Court

finds that judgment is due to be entered in favor of Miller, Philyaw, Rudolph, Shuford, and Sanders and against Owens on all of Owens' claims. In support of this judgment, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

Having listened carefully to the testimony from the witness stand while viewing the demeanor of the witnesses and having considered the documentary exhibits admitted into evidence and the pleadings of the parties, the Court finds that the credible evidence established the following facts relevant to the issues raised by the remaining claims in this lawsuit:

1. On October 30, 2004, Owens was an inmate at Draper.

2. On October 30, 2004, Miller, Philyaw, Rudolph, Shuford, and Sanders were all employed at Draper as correctional officers. Miller had some supervisory responsibilities at Draper.

3. The law library accessible to inmates at Draper is located in the Multipurpose Building. On October 30, 2004, the law library had been closed for inventory. At some point in the day, Rudolph told Owens that he could not go to the law library in the multipurpose building because it was closed for inventory.

4. Later that day, Owens heard from some other inmates that the inventory was finished. He believed that this meant that the law library would be accessible to him. Owens was walking to the multipurpose building when he encountered Rudolph.

5. Rudolph told Owens he could not go to the law library because it was closed. Owens argued with Rudolph and became angry and insubordinate. Owens used profane and offensive language.

6. Following procedures, Rudolph reported the incident with Owens to his supervisor, Miller. Miller directed Rudolph to escort Owens to the Shift Commander's Office. Miller moved to a position where he could watch Rudolph and Owens approach.

7. Owens continued his insubordinate and offensive rant all the way to the Shift Commander's Office. Once there, Owens directed offensive and insubordinate comments to Miller.

8. Miller decided it would be a good idea to put Owens in handcuffs. In his experience, putting an inmate in handcuffs can help diffuse a situation.

9. Owens continued cursing and making offensive statements. He uttered threats to kill one or more of the officers present when he got out of prison.

10. Once in handcuffs, Owens continued to utter offensive and provocative statements.

11. Miller decided to send Owens to the Administrative Segregation Unit because of his behavior.

12. Philyaw and Rudolph escorted Owens to the Administrative Segregation Unit and locked him up into the shower area. They removed the handcuffs from Owens.

13. Sanders, Shufford, and Philyaw were working in the Administrative Segregation

Unit on the evening of October 30, 2004. Because they were busy with other tasks, they left Owens locked up in the shower area until they were ready to process him in to a cell in the Administrative Segregation Unit.

14. Because an inmate being checked into an Administrative Segregation Unit cell will need to carry a number of items to his cell, corrections officers often allow such inmates to remain out of handcuffs when they are escorted from the shower area, which is used as a holding cell for an inmate awaiting processing into the unit, to the cell assigned.

15. Sanders and Shufford approached the shower area to move Owens to a cell. They did not put handcuffs back on Owens before opening the door to the shower area. Owens appeared calm. When Sanders opened the door, however, Owens rushed towards him. Sanders and Shufford tackled Owens to restrain him. After some tussling, they managed to get handcuffs on Owens.

16. During the struggle that ensued as Sanders and Shufford tried to subdue Owens, Owens received an injury to his head. One of his wrists was fractured. Owens also had various other places on his body which were bruised or sore after the incident.

17. Once Owens was in handcuffs again, Sanders and Shufford reported the incident to Miller.

18. Miller and the nurse on duty came to look at Owens' injuries within a period of ten minutes or less.

19. Sanders and another corrections officer escorted Owens from the Administrative

Segregation Unit to a prison health care facility at Staton Correctional Facility, where he was seen by medical professionals who determined that he needed treatment not available at that facility at that time.

20.  Sanders and another corrections officer then escorted Owens from the prison health care facility to Elmore Community Hospital, a free world hospital.

21.  At Elmore Community Hospital, Owens received treatment including liquid stitches on his head wound, which Owens estimated to be about two inches long.

22.  In March of 2005, Owens filed this lawsuit.

## II.  CONCLUSIONS OF LAW

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2.  Venue is appropriate pursuant to 28 U.S.C. § 1391(b).

3. Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

4.  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

5.  From consideration of such factors, "inferences may be drawn as to whether the

use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

6. In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Hudson*, 503 U.S. at 9. An excessive force claim likewise "necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind." *Id*. At 9-10. In *Hudson*, the Court did not define "*de minimus* use of force" but suggested that the degree of the injury received is at least relevant to determining whether more than *de minimus* force was used. *Id.* at 10. The injuries received are only one factor for the Court's consideration; they are not the sole consideration. *Id.* at 7. The court must also considered the need for application of force, the amount of force exerted, the threat reasonably perceived by the official and any efforts to temper the severity of the forceful response. *Skrtich v. Thornton*, 280 F.3d 1295, 1305 n.9 (11th Cir. 2002).

7. The credible evidence establishes that the only force used against Owens on October 30, 2004 was used in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm to Owens.

8. The credible evidence before this Court establishes that the force used to put Owens in handcuffs in the Shift Commander's Office was not excessive.

9. The credible evidence before this Court establishes that the force used to put Owens into the locked shower area of the Administrative Segregation Unit was not excessive.

10. There is no credible evidence before the Court which establishes that any of the defendants slapped, stomped, kicked, struck, or choked Owens to punish him, to retaliate against him, or to intentionally injure him. There is no credible evidence before the Court that any of the defendant tried to stuff a shirt in Owens' mouth. There is no credible evidence before the Court which establishes that any of the defendants struck Owens with a baton on October 30, 2004.

11. Despite the injuries Owens received, the force used to restrain Owens in the shower area of the Administrative Segregation Unit after he rushed at Sanders was not excessive or unreasonable given all of the relevant facts and circumstances. The amount of force used was reasonably limited to the force necessary to restrain him.

12. Owens was not denied medical treatment. The defendant officers were not indifferent to his medical needs and they delivered him for appropriate medical treatment within a reasonable time after he was injured.

13. The credible evidence does not support a conclusion that the defendants to this action obstructed justice or conspired to deprive Owens' of his rights under the United States Constitution.

14. Consistent with this ruling, the Court will enter a written final judgment in favor

of Miller, Philyaw, Rudolph, Shuford, and Sanders and against Owens on all of Owens' remaining claims in this action with Owens taking nothing by his complaint.

15. In light of the foregoing, the oral motion by defendants for judgment as a matter of law on partial findings made at the close of Owens' case in chief is DENIED as MOOT.

DONE this the 11th day of June, 2008.

                                        /s/ Mark E. Fuller
                                CHIEF UNITED STATES DISTRICT JUDGE